IN THE UNITED STATES DITRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  NATOSHA T. LYONS, as Personal Representative of the Estate of Anthony Ray Meely, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 21-CV-297-SPS |
| 1.  CITY OF ADA, | ) | |
| 2.  TYLER W. POGUE, | ) | |
| 3.  RYAN C. COLLIER, | ) | |
| 4.  RICH EAKER, | ) | |
| 5.  MERCY HOSPITAL ADA, INC., | ) | |
| 6.  DEREK GOODSON, | ) | |
| 7.  DANIEL WILBURN, | ) | |
| 8.  BRIAN RIDGEWAY, | ) | |
| 9.  COLTON STONESIPHER, | ) | |
| 10. MAX CROOK, and | ) | |
| 11. UNKNOWN DEFENDANTS 1-10, | ) | |
| Defendants. | | |

## COMPLAINT

NOW COMES the Plaintiff, NATOSHA T. LYONS, as Personal Representative of the Estate of Anthony Ray Meely, by and through counsel, THE LAW OFFICE OF JARRETT ADAMS, PLLC, MATTINGLY & ROSELIUS, PLLC, SAMUELS & ASSOCIATES Ltd, and RYAN KIESEL complaining of the Defendants, CITY OF ADA, TYLER W. POGUE, RYAN C. COLLIER, RICH EAKER, MERCY HOSPITAL ADA, INC., DEREK GOODSON, DANIEL WILBURN, BRIAN RIDGEWAY, COLTON STONESIPHER, MAX CROOK, and UNKNOWN DEFENDANTS 1-10 states as follows:

## INTRODUCTION

1.      This is a federal civil rights action to obtain compensatory damages, punitive

damages, costs, and attorneys' fees for the unlawful detention of, false arrest of, use of excessive force against, failure to provide medical attention to, and wrongful death of Anthony Ray Meely on October 4, 2019 in Ada, Oklahoma. This action also seeks injunctive and equitable relief against the City of Ada to reform the unconstitutional policies and/or customs that were the moving force behind the constitutional violations suffered by Mr. Meely.

JURISDICTION

2.      This action is brought pursuant to the Civil Rights Act, 42 U.S.C. §1983, to address the deprivation under color of law of Anthony Ray Meely's rights as secured by the United States Constitution and under state law.

3.      The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper under 28 U.S.C. § 1391 because the Eastern District of Oklahoma is the judicial district where the constitutional rights violations suffered by Anthony Ray Meely occurred.

PARTIES

5.      Plaintiff, Natosha Lyons, is the Personal Representative of the Estate of Anthony Ray Meely, deceased, and in such capacity brings this action against Defendants. Natosha is the surviving spouse of the deceased Mr. Meely.

6.      Anthony Ray Meely, at the time of his death, was a citizen of the United States of America who at all relevant times resided in the State of Oklahoma.

7.      Anthony Ray Meely, at the time of his death, had five minor children.

8.      Defendant, City of Ada ("Defendant City") is a municipal corporation duly

2

incorporated under the laws of the State of Oklahoma. At all relevant times, Defendant City was the employer and principal of the individual defendant Ada Police Department ("APD") officers who acted pursuant to Defendant City's policies and customs.

9.      Defendant, Tyler W. Pogue ("Defendant Officer Pogue"), at all relevant times, was an adult resident of the State of Oklahoma and was an APD police officer. At all relevant times, Defendant Officer Pogue acted under color of law, within the course and scope of his employment with Defendant City, and pursuant to Defendant City's policies and customs.

10.      Defendant, Ryan C. Collier ("Defendant Officer Collier"), at all relevant times, was an adult resident of the State of Oklahoma and was an APD police officer. At all relevant times, Defendant Officer Collier acted under color of law, within the course and scope of his employment with Defendant City, and pursuant to Defendant City's policies and customs.

11.      Defendant, Rich Eaker ("Defendant Officer Eaker"), at all relevant times, was an adult resident of the State of Oklahoma and was an APD police officer. At all relevant times, Defendant Officer Eaker acted under color of law, within the course and scope of his employment with Defendant City, and pursuant to Defendant City's policies and customs.

12.      Defendant, Mercy Hospital Ada, Inc. ("Defendant Mercy"), is a domestic, not-for-profit corporation duly incorporated under the laws of the State of Oklahoma. Defendant Mercy's registered agent for the service of process is Corporation Service Company, 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159. At all relevant times, Defendant Mercy was the employer, master, and principal of the individual defendant emergency medical technicians.

13.      Defendant, Derek Goodson ("Defendant EMT Goodson"), at all relevant times, was an adult resident of the State of Oklahoma and was an emergency medical technician employed by Defendant Mercy. At all relevant times, Defendant EMT Goodson acted within the

course and scope of his employment with Defendant Mercy.

14.     Defendant, Daniel Wilburn ("Defendant EMT Wilburn"), at all relevant times, was an adult resident of the State of Oklahoma and was an emergency medical technician employed by Defendant Mercy. At all relevant times, Defendant EMT Wilburn acted within the course and scope of his employment with Defendant Mercy.

15.     Defendant, Brian Ridgeway ("Defendant EMT Ridgeway"), at all relevant times, was an adult resident of the State of Oklahoma and was an emergency medical technician employed by Defendant Mercy. At all relevant times, Defendant EMT Ridgeway acted within the course and scope of his employment with Defendant Mercy.

16.     Defendant, Colton Stonesipher ("Defendant EMT Stonesipher"), at all relevant times, was an adult resident of the State of Oklahoma and was an emergency medical technician employed by Defendant Mercy. At all relevant times, Defendant EMT Stonesipher acted within the course and scope of his employment with Defendant Mercy.

17.     Defendant, Max Crook ("Defendant EMT Crook"), at all relevant times, was an adult resident of the State of Oklahoma and was an emergency medical technician employed by Defendant Mercy. At all relevant times, Defendant EMT Crook acted within the course and scope of his employment with Defendant Mercy.

18.     Unknown Defendants 1-10 are currently unknown individuals who were either employees of Defendant City or Defendant Mercy. At all relevant times, Unknown Defendants 1-10 acted within the course and scope of their employment with Defendant City or Defendant Mercy, and the Unknown Defendants who were employees of Defendant City acted pursuant to Defendant City's policies and customs.

FACTS

Facts Pertaining to the Death of Anthony Ray Meely

19.     On October 4, 2019 at 4:39 p.m., Dakota McDowell called the APD to report a verbal dispute between a man and a woman at the Emerald Pointe Apartments in Ada, Oklahoma.

20.     Defendant Officer Pogue responded to the Emerald Pointe Apartments.

21.     Defendant Officer Pogue saw Anthony Ray Meely in a grassy area.

22.     Defendant Officer Pogue escalated the situation by yelling "Hey! Come here! Come here!" at Anthony Ray Meely.

23.     Prior to yelling at Anthony Ray Meely, Defendant Officer Pogue did not speak to Dakota McDowell or any other adults at the Emerald Pointe Apartments.

24.     If Defendant Officer Pogue had spoken to Dakota McDowell and/or any other adults at the Emerald Pointe Apartments prior to confronting Anthony Ray Meely, Defendant Officer Pogue would have learned that Mr. Meely was experiencing a mental health crisis.

25.     Defendant Officer Pogue escalated the situation by quickly walking towards Anthony Ray Meely, yelling "I just want to talk to you man!" and "You ain't in no trouble!"

26.     Defendant Officer Pogue escalated the situation by starting to chase Anthony Ray Meely, despite lacking any reason to suspect or believe that Mr. Meely had committed, was committing, or was about to commit a crime.

27.     Defendant Officer Pogue chased Anthony Ray Meely into the middle of Oak Street.

28.     Defendant Officer Pogue escalated the situation by yelling "Stop!" at Anthony Ray Meely.

5

29.     In response, Anthony Ray Meely stopped, put his hand up, and said "Yes sir" to Defendant Officer Pogue.

30.     Defendant Officer Pogue escalated situation by yelling at Anthony Ray Meely to sit down.

31.     In response, Anthony Meely sat down and said "Yes sir" to Defendant Officer Pogue

32.     Prior to sitting down in compliance with Defendant Officer Pogue's order, Anthony Ray Meely was bent over and out of breath.

33.     In obvious emotional distress and fear of Defendant Officer Pogue, Anthony Ray Meely screamed "Somebody, please!"

34.     Anthony Ray Meely got up and began pleading with Defendant Officer Pogue, yelling "Please!"

35.     In response, Defendant Officer Pogue escalated the situation by grabbing Anthony Ray Meely and taking him to the ground.

36.     Defendant Officer Pogue escalated the situation by arresting Anthony Ray Meely, despite lacking any reason to suspect or believe that Mr. Meely had committed, was committing, or was about to commit a crime.

37.     Attempting to handcuff Anthony Ray Meely, Defendant Officer Pogue escalated the situation by yelling at Mr. Meely to give up his hands and to put his hands behind his back.

38.     In response, Anthony Ray Meely stated "OK."

39.     Defendant Officer Pogue escalated the situation by yelling "Give me your hand! Give me your hand now!" at Anthony Ray Meely.

40.     In response, Anthony Ray Meely stated "Please" and "You have my hand."

41.     In obvious emotional distress and fear of Defendant Officer Pogue, Anthony Ray Meely screamed, got up off the ground, and ran down Oak Street.

42.     Defendant Officer Pogue approached Anthony Ray Meely who was standing in the middle of the street.

43.     Defendant Pogue Officer escalated the situation by screaming "Get on the ground! Get on the ground!" at Anthony Ray Meely.

44.     Anthony Ray Meely's pants were partially down, exposing his buttocks.

45.     Even though there was no reason to suspect or believe that Anthony Ray Meely presented a threat of death or bodily harm to anyone, Defendant Officer Pogue escalated the situation by drawing his gun and pointing it at Mr. Meely.

46.     In response, Anthony Ray Meely ran down the street and stated "Don't shoot."

47.     Defendant Officer Pogue escalated the situation by chasing Anthony Ray Meely down the street, pointing his gun at Mr. Meely, and yelling at Mr. Meely.

48.     During the chase, Anthony Ray Meely stopped and bent over.

49.     Defendant Officer Pogue escalated the situation by taking Anthony Ray Meely to the ground and subduing Mr. Meely with the assistance of two civilians.

50.     Defendant Officer Pogue struck Anthony Ray Meely in the back between the shoulder blades.

51.     Defendant Officer Collier arrived and assisted Defendant Officer Pogue in handcuffing Anthony Ray Meely.

52.     Defendant Officer Collier used his police baton to apply pressure to Anthony Ray Meely's shin and to pry Mr. Meely's right arm so it could be handcuffed.

53.     When Defendant Officer Pogue and Defendant Officer Collier attempted to get

Anthony Ray Meely to stand up, Mr. Meely became motionless and unresponsive.

54.     Despite the fact that Anthony Ray Meely was motionless and unresponsive, Defendant Officer Pogue and Defendant Officer Collier did not immediately request emergency medical services for Mr. Meely.

55.     Despite the fact that Anthony Ray Meely was motionless and unresponsive, Defendant Officer Pogue and Defendant Officer Collier did not provide any medical assistance to Mr. Meely, such as repositioning his body, performing cardiopulmonary resuscitation ("CPR") and/or attempting to obtain an automated external defibrillator ("AED").

56.     Instead summoning medical assistance for or providing medical assistance to Anthony Ray Meely, Defendant Officer Pogue and Defendant Officer Collier began to interrogate Mr. Meely.

57.     Anthony Ray Meely was motionless and unresponsive during Defendant Officer Pogue and Defendant Officer Collier's interrogation.

58.     Defendant Officer Eaker arrived at the scene during Defendant Officer Pogue and Defendant Officer Collier's interrogation of Anthony Ray Meely.

59.     At no time during the incident did Defendant Officer Pogue attempt de-escalate the encounter with Anthony Ray Meely, who was in obvious mental distress.

60.     De-escalation tactics that Defendant Officer Pogue could have used, but did not, during the encounter with Anthony Ray Meely include, but are not limited, to:  (a) focusing on, showing respect for, and not judging Mr. Meely's distressed mental state; (b) respecting Mr. Meely's personal space; (c) using non-threatening language and non-verbal gestures with Mr. Meely; (d) remaining calm and maintaining control over his emotions; (e) avoiding over-reactions; and (f) slowing down to allow time for proper decision making.

61.     After several minutes, Defendant Officer Collier finally contacted APD dispatch to request emergency medical services for Anthony Ray Meely.

62.     Without performing any evaluation or inspection of Anthony Ray Meely, Defendant Officer Collier erroneously reported to APD dispatch that Mr. Meely had no visible injuries and had decided to stop talking.

63.     Defendant EMT Goodson and Defendant EMT Wilburn arrived at the scene only a few minutes after Defendant Officer Collier contacted APD dispatch to request emergency medical services for Anthony Ray Meely.

64.     Defendant Officer Pogue, Defendant Officer Collier, and Defendant Officer Eaker did not provide any medical assistance to Anthony Ray Meely while they waited for emergency medical services to arrive.

65.     Anthony Ray Meely was motionless and unresponsive when Defendant EMT Goodson and Defendant EMT Wilburn arrived at the scene.

66.     Defendant EMT Goodson or Defendant EMT Wilburn performed a sternal rub on Anthony Ray Meely.

67.     A sternal rub is a pain stimulus technique where an EMT applies a closed fist to a person's chest for the purpose of assessing the consciousness of a person not responding to verbal commands or mild stimulus.

68.     Anthony Ray Meely was motionless and unresponsive during Defendant EMT Goodson or Defendant EMT Wilburn's sternal rub, which was an obvious sign of a medical emergency.

69.     Defendant EMT Goodson or Defendant EMT Wilburn applied smelling salts to Anthony Ray Meely for the purpose of assessing Mr. Meely's consciousness.

70.     Anthony Ray Meely was motionless and unresponsive during Defendant EMT Goodson or Defendant EMT Wilburn's application of smelling salts, which was an obvious sign of a medical emergency.

71.     Despite the fact that Anthony Ray Meely was motionless, unresponsive, and in an obvious medical emergency, Defendant EMT Goodson and Defendant EMT Wilburn did not provide any medical assistance to Mr. Meely for approximately seven minutes.

72.     Instead of providing medical assistance to Anthony Ray Meely, Defendant EMT Goodson and Defendant EMT Wilburn stood around talking and speculating about whether Mr. Meely was drunk or having a seizure.

73.     There was no reason to believe or suspect that Anthony Ray Meely was drunk or having a seizure.

74.     After being on scene for seven minutes, Defendant EMT Goodson and Defendant EMT Wilburn finally loaded Anthony Ray Meely onto a gurney and into an ambulance.

75.     As Defendant EMT Goodson and Defendant EMT Wilburn were loading Anthony Ray Meely into the ambulance, one of them stated that they were going to "see if we can figure something out."

76.     Once Anthony Ray Meely was in the ambulance, Defendant EMT Goodson and Defendant EMT Wilburn realized that Mr. Meely was in cardiac arrest and not breathing.

77.     A few minutes after Defendant EMT Goodson and Defendant EMT Wilburn realized that Anthony Ray Meely was in cardiac arrest and not breathing, they requested that an additional emergency services medical unit respond to the scene and bring a Lucas machine, which provides automated CPR.

78.     Defendant EMT Stonesipher and Defendant EMT Crook arrived at the scene a

few minutes later.

79.     Defendant EMT Ridgeway arrived at the scene.

80.     Despite the fact that Anthony Ray Meely was in cardiac arrest and not breathing, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Stonesipher, Defendant EMT Crook, and Defendant EMT Ridgeway remained on the scene and did not transport Mr. Meely to Mercy Hospital in Ada for approximately 20 minutes.

81.     When Defendant EMT Goodson and Defendant EMT Wilburn finally transported Anthony Ray Meely to Mercy Hospital in Ada, it took only seven minutes for the ambulance to travel from the scene to the hospital.

82.     Anthony Ray Meely was pronounced dead at Mercy Hospital in Ada.

83.     Following the death of Anthony Ray Meely, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Stonesipher, Defendant EMT Crook, and/or Defendant EMT Ridgeway prepared a report containing erroneous information about their encounter with Mr. Meely.

84.     Following the death of Anthony Ray Meely, the State of Oklahoma, Board of Medicolegal Investigations, Officer of the Chief Medical Examiner performed an autopsy of Mr. Meely.

85.     The autopsy found that the probable cause of Anthony Ray Meely's death was "cardiac arrest following physical exertion and restraint in the setting of methamphetamine."

86.     The autopsy found that Anthony Ray Meely suffered contusions, abrasions, and scratches to his scalp, right shoulder, abdomen, left forearm, wrists, and legs.

87.     If Defendant Officer Pogue had not chased Anthony Ray Meely, grabbed Mr. Meely, taken Mr. Meely to the ground, pinned Mr. Meely on the ground, drawn his gun and

pointed it at Mr. Meely, and terrified Mr. Meely, all of which caused Mr. Meely's physical exertion, Mr. Meely would not have died.

88.     If Defendant Officer Pogue, Defendant Officer Collier, and/or Defendant Officer Eaker had not restrained Anthony Ray Meely with physical force, Mr. Meely would not have died.

89.     If Defendant Officer Pogue, Defendant Officer Collier, and/or Defendant Officer Eaker had immediately requested emergency medical services for Anthony Ray Meely when he became motionless and unresponsive, Mr. Meely would not have died.

90.     If Defendant Officer Pogue, Defendant Officer Collier, and/or Defendant Officer Eaker had provided emergency medical assistance to Anthony Ray Meely when he became motionless and unresponsive instead of interrogating him, Mr. Meely would not have died.

91.     If Defendant Officer Pogue, Defendant Officer Collier, and/or Defendant Officer Eaker had provided medical assistance to Anthony Ray Meely while they waited for emergency medical services to arrive, Mr. Meely would not have died.

92.     If Defendant EMT Goodson and/or Defendant EMT Wilburn provided immediate medical assistance to Anthony Ray Meely when they arrived on the scene instead of standing around and talking for seven minutes, Mr. Meely would not have died.

93.     If Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Stonesipher, Defendant EMT Crook, and/or Defendant EMT Ridgeway immediately transported Anthony Ray Meely to Mercy Hospital in Ada when they realized he was in cardiac arrest and not breathing instead of waiting approximately 20 minutes, Mr. Meely would not have died.

94.     As a direct and proximate cause of the actions and inactions of Defendant Officer Pogue, Defendant Officer Collier, Defendant Officer Eaker, Defendant EMT Goodson,

Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook, as set forth above, Anthony Ray Meely suffered bodily injury, pain and suffering, severe emotional distress, severe mental pain and anguish, and death.

95.     As a direct and proximate cause of the actions and inactions of Defendant Officer Pogue, Defendant Officer Collier, Defendant Officer Eaker, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook, as set forth above, Plaintiff sustained medical and burial expenses.

96.     As a direct and proximate cause of the actions and inactions of Defendant Officer Pogue, Defendant Officer Collier, Defendant Officer Eaker, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook, as set forth above, Natosha Lyons suffered grief and the loss of consortium, society, companionship, and support of her husband Anthony Ray Meely.

97.     As a direct and proximate cause of the actions and inactions of Defendant Officer Pogue, Defendant Officer Collier, Defendant Officer Eaker, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook, as set forth above, Anthony Ray Meely's five children suffered pecuniary loss, grief, loss of companionship, and the loss of their father's support.

98.     The conduct of Defendant Officer Pogue, Defendant Officer Collier, Defendant Officer Eaker, Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook, as set forth above, was motivated by malice, evil motive, and/or evil intent, was grossly negligent, and involved a reckless or callous indifference and/or disregard to Anthony Ray Meely's federal and state protected rights.

Facts Pertaining to Defendant City's Unconstitutional Policies and/or Customs

99.     The Mayor, the City Council, and/or the Chief of Police are the policymakers for Defendant City with respect to the training of APD officers.

100.    APD officers encountering individuals who are suffering from emotional distress, having mental illness, and/or experiencing a crisis situation are recurring situations that present an obvious potential for constitutional violations.

101.    APD officers dealing with intense situations involving individuals who are suffering from emotional distress, having mental illness, and/or experiencing a crisis situation are recurring situations that present an obvious potential for constitutional violations.

102.    APD officers detaining individuals, arresting individuals, and using force against individuals are recurring situations that present an obvious potential for constitutional violations.

103.    Crisis Intervention Training ("CIT") is designed to help police officers to recognize individuals who are suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation.

104.    CIT is designed to help police officers understand that individuals who are suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation may not have the same response to commands as individuals who are not suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation.

105.    CIT teaches police officers about ways to de-escalate intense situations with individuals who are suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation.

106.    CIT teaches police officers about ways to deal with intense situations with individuals who are suffering from emotional distress, having various mental illnesses, and/or

14

experiencing a crisis situation without having to detain, arrest, and/or use force against the individuals.

107.    The policymakers of Defendant City knew that CIT training reduces constitutional violations committed by APD officers, including, but not limited to, unlawful detentions, false arrests, and the use of excessive force.

108.    Prior to October 4, 2019, Defendant City failed to provide Defendant Officer Pogue with CIT.

109.    CIT would have helped Defendant Officer Pogue recognize Anthony Ray Meely as an individual who was suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation.

110.    CIT would have helped Defendant Officer Pogue understand that Anthon Ray Meely may not have the same response to commands as individuals who are not suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation.

111.    CIT training would have helped Defendant Officer Pogue de-escalate the intense situation with Anthony Ray Meely without having to detain, arrest, and/or use force against Mr. Meely.

112.    Defendant City also failed to train Defendant Officer Pogue that the use of force must be proportional to the threat of harm.

113.    Defendant City also failed to train Defendant Officer Pogue on the proper use of a gun.

114.    Prior to October 4, 2019 and continuing to the present, it was the policy and/or custom of Defendant City not to adequately train APD officers to properly encounter individuals who are suffering from emotional distress, having various mental illnesses, and/or experiencing a

crisis situation and to properly use force against individuals because Defendant City fails to:  (a) provide CIT training; (b) train that the use of force must be proportional to the threat of harm; and (c) train on the proper use of gun.

115.    Defendant City's policymakers were/are aware of the policy and/or custom of failing to training APD officers, as set forth above, but have failed to take action to remedy the problem.

116.    Defendant City's policymakers made a deliberate and/or conscious choice to have an inadequate training program for APD officers, as set forth above.

117.    Defendant City's policymakers were/are aware that the policy and/or custom of failing to training APD officers, as set forth above, likely would result in constitutional violations including, but not limited to, unlawful detentions, false arrests, and the use of excessive force.

118.    Defendant City's policymakers disregarded the known and obvious consequence of the constitutional violations that result from failing to train APD officers, as set forth above.

119.    The need for more or different training for APD officers to properly encounter individuals who are suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation and to properly use force against individuals was obvious to Defendant City's policymakers.

120.    The violation of constitutional rights was a certain, foreseeable, and/or obvious consequence of Defendant City's failure train APD officers, as set forth above.

121.    Defendant City's policy and/or custom of failing to train APD officers, as set forth above, has resulted in a widespread pattern of constitutional violations.

122.    For example, on September 21, 2019, APD officers unlawfully detained, falsely arrested, and used excessive force against Jeffrey Peterson, resulting in his death.

123.     As set forth above, Defendant Officer Pogue improperly responded to his encounter with Anthony Ray Meely, an individual who was suffering from emotional distress, having various mental illnesses, and/or experiencing a crisis situation, by unlawfully detaining Mr. Meely, falsely arresting Mr. Meely, drawing his gun and pointing it at Mr. Meely, and using excessive force against Mr. Meely.

124.     As set forth above, Defendant Officer Pogue failed to de-escalate the intense situation with Anthony Ray Meely.

125.     As set forth above, Defendant Officer Pogue repeatedly escalated the intense situation with Anthony Ray Meely.

126.     As set forth above, Defendant Officer Pogue improperly responded to the minimal threat of harm associated with Anthony Ray Meely by drawing his gun and using excessive force against Mr. Meely.

127.     The policies and customs of Defendant City with respect to training APD officers, as set forth above, were the moving force behind the constitutional violations sustained by Anthony Ray Meely.

128.     If Defendant City had provided CIT, adequate training on the use of force, and/or adequate training on the proper use of a gun to APD officers, including Defendant Officer Pogue, the constitutional violations sustained by Anthony Ray Meely would not have occurred.

129.     Defendant City's policy and/or custom of failing to train APD officers was a proximate cause of Plaintiff's injuries and damages, as set forth above.

130.     Defendant City's policy and/or custom of failing to train APD officers may continue to the present.

CAUSES OF ACTION

COUNT I:  42 U.S.C. §1983 – Unlawful Detention Claim

Against Defendant Officer Pogue, Defendant Officer Collier, and Defendant Officer Eaker

131.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

132.    Anthony Ray Meely was detained by the above-named individual Defendants.

133.    There was no reasonable suspicion to detain Anthony Ray Meely.

134.    The above-named individual Defendants acted under color of law.

135.    The unlawful detention of Anthony Ray Meely violated Mr. Meely's Fourth Amendment right to be free from unreasonable searches and seizures.

136.    The unlawful detention of Anthony Ray Meely proximately caused injuries and damages to Plaintiff, as set forth above.

137.    The unlawful detention of Anthony Ray Meely was undertaken pursuant to Defendant City's unconstitutional policies and customs, as set forth above.

COUNT II:  42 U.S.C. §1983 – False Arrest Claim

Against Defendant Officer Pogue, Defendant Officer Collier, and Defendant Officer Eaker

138.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

139.    Anthony Ray Meely was arrested by the above-named individual Defendants.

140.    There was no probable cause to arrest Anthony Ray Meely.

141.    The above-named individual Defendants acted under color of law.

142.    The false arrest of Anthony Ray Meely violated Mr. Meely's Fourth Amendment right to be free from unreasonable searches and seizures.

143.     The false arrest of Anthony Ray Meely proximately caused injuries and damages to Plaintiff, as set forth above.

144.     The false arrest of Anthony Ray Meely was undertaken pursuant to Defendant City's unconstitutional policies and customs, as set forth above.

COUNT III:  42 U.S.C. §1983 – Excessive Force Claim

Against Defendant Officer Pogue, Defendant Officer Collier, and Defendant Officer Eaker

145.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

146.     The above-named individual Defendants used unreasonable and excessive force against Anthony Ray Meely.

147.     The above-named individual Defendants acted under color of law.

148.     The use of excessive force against Anthony Ray Meely violated Mr. Meely's Fourth Amendment right to be free from unreasonable searches and seizures.

149.     The use of excessive force against Anthony Ray Meely proximately caused injuries and damages to Plaintiff, as set forth above.

150.     The use of excessive force against Anthony Ray Meely was undertaken pursuant to Defendant City's unconstitutional policies and customs, as set forth above.

COUNT IV:  42 U.S.C. §1983 – Failure to Provide Adequate Medical Care Claim

Against Defendant Officer Pogue, Defendant Officer Collier, and Defendant Officer Eaker

151.     Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

152.     Anthony Ray Meely had an objectively serious medical condition.

153.     The substantial risk of harm to Anthony Ray Meely from his objectively serious

medical condition was obvious.

154.    The above-named individual Defendants knew that Anthony Ray Meely faced a substantial risk of harm from his objectively serious medical condition.

155.    The above-named individual Defendants disregarded the substantial risk of harm to Anthony Ray Meely by failing to take reasonable measures to abate the risk.

156.    The conduct of the above-named individual Defendants in failing to provide Anthony Ray Meely with adequate medical care was objectively unreasonable.

157.    The above-named individual Defendants were deliberately indifferent to Anthony Ray Meely's objectively serious medical condition.

158.    The above-named individual Defendants acted under color of law.

159.    The failure to provide Anthony Ray Meely with adequate medical care violated Mr. Meely's Fourth Amendment and/or Fourteenth Amendment rights.

160.    The failure to provide Anthony Ray Meely with adequate medical care proximately caused injuries and damages to Plaintiff, as set forth above.

COUNT V:  *Monell* Failure to Train Claim

Against Defendant City

161.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

162.    As set forth above, Defendant City has an inadequate training program for APD officers.

163.    Defendant City's failure to train APD officers, as set forth above, reflected deliberate indifference to constitutional rights of individuals with whom APD officers come into contact, including, but not limited to, Anthony Ray Meely.

164.    Defendant City's failure to train APD officers, as set forth above, was the moving force behind the constitutional violations sustained by Anthony Ray Meely.

165.    Defendant City's failure to train APD officers, as set forth above, proximately caused injuries and damages to Plaintiff, as set forth above.

COUNT VI:  Oklahoma State Law Medical Negligence Claim

Against Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway,

Defendant EMT Stonesipher, and Defendant EMT Crook

166.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

167.    The above-named individual Defendants owed a duty of care to Anthony Ray Meely to protect him from injury.

168.    The above-named individual Defendants failed to properly exercise and/or perform their duty of care to Anthony Ray Meely.

169.    The actions and/or omissions of the above-named individual Defendants were done within the scope of their employment with Defendant Mercy.

170.    The above-named individual Defendants' failure to properly exercise and/or perform their duty of care to Anthony Ray Meely proximately caused injuries and damages to Plaintiff, as set forth above.

COUNT VII:  Oklahoma State Law Wrongful Death Claim

Against Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway,

Defendant EMT Stonesipher, and Defendant EMT Crook

171.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

172.    The wrongful acts and/or omissions by the above-named individual Defendants caused the death of Anthony Ray Meely.

173.    The wrongful death of Anthony Ray Meely by the above-named Defendants proximately caused injuries and damages to Plaintiff, as set forth above.

COUNT VIII: *Respondeat Superior*

Against Defendant Mercy

174.    Plaintiff hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

175.    Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook were the servants for their master Defendant Mercy.

176.    Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook committed negligent acts against Anthony Ray Meely.

177.    Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook's negligent acts proximately caused injuries and damages to Plaintiff, as set forth above.

178.    Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook committed the negligent acts while in the course and scope of their employment with Defendant Mercy.

Defendant Mercy is liable for Plaintiff's injuries and damages, as set forth above, proximately resulting from the negligent acts of Defendant EMT Goodson, Defendant EMT Wilburn, Defendant EMT Ridgeway, Defendant EMT Stonesipher, and Defendant EMT Crook.

WHEREFORE the Plaintiff, NATOSHA T. LYONS, as Personal Representative of the

Estate of Anthony Ray Meely, respectfully requests that the Court enter judgment in her favor

against Defendants, awarding compensatory damages and attorney's fees against all Defendants,

punitive damages against the individual Defendants, injunctive and/or equitable relief against

Defendant City, and any such other and further relief as the Court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully Submitted,
NATOSHA T. LYONS, as Personal
Representative of the Estate of
Anthony Ray Meely,


By:  s/Jack Mattingly, Jr.
Jack Mattingly Jr., OBA #16135
MATTINGLY & ROSELIUS, PLLC
P.O. Box 70
Seminole, OK  74818-0070
Phone: (405) 382-3333
Fax:    (405) 362-6303
E:  jackjr@mroklaw.com


Jarrett Adams, NY SBN# 5455712
Law Offices Of Jarrett Adams, PLLC
*(Pro Hac Vice Pending)*
40 Fulton St., Floor 23
New York, New York 10038
Phone: (646) 880-9707
Fax:    (646) 880-9707
E: JAdams@JarrettAdamsLaw.com


Jeanette Samuels, IL #6313890
Samuels & Associates, Ltd.
3440 S. Cottage Grove Ave, #504
Chicago, Illinois 60616
T: 872.588.8726 │F: 872.813.5256
(*Pro Hac Vice* Pending)

Ryan Kiesel, OBA #21254
3022 NW 39th St. #57532
Oklahoma City, OK 73157
405-303-1215
ryan@rkoklaw.com